**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GARY MARCUS HALL,<br><br>    Defendant and Appellant. | A165406<br><br>(Del Norte County<br>Super. Ct. No. CRF219022)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

**BY THE COURT**:[*]

It is ordered that the opinion filed herein on December 13, 2023, be modified as follows:

1. On page 9, after the last full paragraph ending "sentencing factors in aggravation," add as footnote 4 the following footnote, which will require the renumbering of all subsequent footnotes:

[4] In his petition for rehearing, defendant urges that we misperceived his argument as one based solely on the recent amendments to section 1170, subdivision (b)(1) and his argument was, in fact, based on a "line of California cases" like *People v. Mancebo* (2002) 27 Cal.4th 735 and therefore *Pantaleon* is inapposite. In *Mancebo,* our high court reiterated that "a defendant has a cognizable due process right to fair notice of the specific *sentence enhancement* allegations that will be

---

[*] Margulies, J. (retired) did not participate in the consideration of the rehearing petition.

invoked to increase punishment for his crimes." (*Id.* at p. 747, italics added.)  As the court in *Pantaleon* explained, there is a long-recognized distinction between sentencing enhancements and aggravating factors. (*Pantaleon, supra,* 89 Cal.App.5th at pp. 939, 941.)  The Court of Appeal therefore rejected the defendant's "constitutional theory of error" that he had not only a statutory right to pleading notice of aggravating factors, but also a "fair notice" due process right to pleading notice of factors in aggravation.  (*Id.* at p. 941.)  Indeed, the court observed the "defendant's constitutional theory of error [was] foreclosed by binding authority."  (*Ibid.*, citing *In re Varnell* (2003) 30 Cal.4th 1132, 1135, 1141–1142.)  Defendant asserts *Pantaleon* confined its analysis to aggravating factors not required to be tried by a jury, namely prior convictions of increasing seriousness and crimes committed while the defendant was on probation.  (*Pantaleon,* at p. 938.)  We fail to see how this is relevant to an argument that due process requires the *pleading* of factors in aggravation, and as we shall discuss, here, too, one of the factors in aggravation was defendant's prior criminal history.  In sum, in the absence of *any* case holding that constitutional due process requires that factors in aggravation be pled, we shall follow established precedent to the contrary.

2. On page 24, delete the second full paragraph beginning "In his closing brief, defendant argues," and replace it with the following paragraph and new footnote 12, which will require the renumbering of all subsequent footnotes:

In his closing brief, defendant argues for the first time that *Black II* "is not good law as applied to amended section 1170."[12]  He claims that under the amended law, a single aggravating factor is "no longer legally sufficient to make a defendant eligible for the upper term," (some capitalization & boldface omitted) as was the law when *Apprendi* and *Black II* were decided, and he points to the split in the Courts of Appeal as to the applicable standard for determining "harmlessness with regard to SB 567 error."

[12] We note that in his opening brief, defendant twice cited affirmatively to *Black II* in discussing the history and import of *Cunningham, supra,* 549 U.S. 270, with no hint *Black II's* holding is no longer good law.

3.  On page 25, the first sentence of the first full paragraph is modified to read:

> Defendant cites no case holding that one factor in aggravation is *never* sufficient to impose an upper term, even in a case like this one where the court found *no* factors in mitigation.

There is no change in the judgment.

The petition for rehearing is denied.

Dated: _____
                           Banke, Acting P. J.*

* Justice Margulies did not participate in the consideration of the rehearing petition.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>GARY MARCUS HALL,<br><br>     Defendant and Appellant. | A165406<br><br>(Del Norte County<br>Super. Ct. No. CRF219022) |

## I. INTRODUCTION

In this case we consider a negotiated disposition entered into after the effective date of the recent amendments to Penal Code section 1170, [1] subdivision (b) made by Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567), and the sentence passed in accordance therewith. Defendant Gary Marcus Hall pleaded no contest to two counts of committing lewd or lascivious acts on a child under the age of 14 years (§ 288, subd. (a)). Consistent with the negotiated disposition, the trial court sentenced him to 10 years in prison, which included the upper term on one of the two counts.

Defendant challenges his sentence on three grounds—(1) the court (and the parties) mistakenly assumed he was presumptively ineligible for probation; (2) the aggravating factors found by the court were not pleaded; and (3) the court erred in finding aggravating factors in the absence of his

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

1

personal waiver in open court of his right to jury trial on the facts supporting such factors.  As to the latter ground, defendant advances only a Sixth Amendment challenge and has expressly disavowed any challenge on the basis of the recent amendments to section 1170, subdivision (b).

In addressing his arguments we consider, among other issues, the following: the distinction drawn by our Supreme Court between a constitutionally sufficient general jury trial waiver and the sufficiency of a waiver of statutory jury trial rights; forfeiture of the "certified record" evidentiary requirement imposed by the recent amendments to section 1170, subdivision (b) by failing to object to use of the probation report to establish defendant's prior convictions; whether one prior conviction can, in this particular case, constitute a factor in aggravation under California Rules of Court rule 4.421(b)(2); and whether *People v. Black* (2007) 41 Cal.4th 799 (*Black II*) remains controlling as to whether an aggravated sentence comports with the Sixth Amendment when one aggravating factor has been found in a constitutionally permissible manner and the trial court has found no factors in mitigation.

We conclude the judgment should be affirmed.

## I.  BACKGROUND[2]

Defendant, a registered sex offender, was friends, and resided, with the two victims' grandfather.  The victims were under the age of 14 at the time of the molestations.  One recalled approximately 20 incidents of abuse, including instances of defendant fondling his penis, masturbating him, and orally copulating him.  The last incident occurred when he was 12 or 13 years

---

[2] Our brief factual summary is based in part on the transcript of the preliminary hearing, which the parties stipulated provided a factual basis for defendant's plea.

old. The other victim recalled four instances where defendant molested him when he was under or around 10 years old. Defendant variously sodomized him, laid in bed with him and pulled down his underwear, and grabbed his penis over his clothes.

In 2021, the People charged defendant with sodomy of a child 10 years old or younger (§ 288.7, subd. (a)); two counts of continuous sexual abuse of a child (§ 288.5, subd. (a)); and failure to register as a sex offender (§ 290.018). The continuous sexual abuse counts included an enhancement allegation of a prior conviction of section 288 (§ 667.51, subd. (a)). Defendant faced a potential sentence of 25 years to life on the sodomy count, 16 years each on the continuous abuse counts plus five years each for the related enhancements, and one year on the failure to register count—in sum, 68 years to life.

At the preliminary hearing, the trial court admitted evidence of a 1995 misdemeanor conviction for violation of section 288, subdivision (c)—lewd or lascivious acts on a child 14 or 15 years old—which required defendant to register as a sex offender.

In February 2022, pursuant to a negotiated disposition, the People filed an amended information, adding two felony counts of committing lewd acts upon a child under the age of 14 (§ 288, subd. (a))—one count for each victim— to which defendant pleaded no contest. As summarized on the change of plea form, the disposition provided that the trial court "could grant probation with time in jail all the way up to 10 years in prison (base term plus 1/3 the middle term for the 2nd count if ran [sic] consecutive)." Defendant initialed the provision of the form that stated, "I understand that I am not eligible for probation in this case. Presumptively ineligible."

3

Defendant also initialed the provision of the change of plea form stating, "I understand the Court will not decide whether to accept a plea or sentence bargain or to impose sentence or extend probation: until a Probation Officer makes an investigation and reports on my background, prior record (if any) and the circumstances of the case."

He additionally initialed the provisions of the form waiving his rights, to among other things, a jury trial. These provisions stated, in pertinent part, "10. I understand that, as to each charge I plead to and each special allegation and/or sentence enhancement I admit to be true, I have the following rights: [¶] . . . [¶] b. A speedy and public trial by jury. c. Representation by an attorney at all times. d. See, hear, and question all witnesses who testify against me. [¶] . . . [¶] 11. I understand that by this plea and any admissions I am making, I give up all the rights which are listed above except the continuing right to be represented by an attorney."

At the change of plea hearing, the prosecutor summarized the plea agreement as follows: "A plea of no contest to Count 5 and a plea of no contest to Count 6. All sentencing options would be open to the Court. The Court could consider all aggravating factors. That's the stipulation under 1170(b)"—a maximum potential exposure of 10 years. Defense counsel agreed. Defendant, himself, also stated that was his understanding of the negotiated disposition.

Prior to accepting defendant's no contest pleas, the court reviewed the plea form with him, and defendant personally confirmed that he read and understood it and had given up all the rights as stated therein, including his "right to have a jury trial." Counsel then stipulated that the preliminary hearing transcript could be used as a factual basis for the plea, with defense counsel stating defendant was "not admitting guilt in any way." The

4

prosecutor also asked that the record specifically reflect "the parties' stipulation under Penal Code section 1170(b)(2) as to what the Court can consider at sentencing," and specifically "all aggravating factors" "in [California Rules of Court] [r]ule 4.421."[3] Defense counsel concurred. The trial court then specifically asked defendant whether he had heard the recited terms of the disposition, including that the "Court could consider all aggravating factors," and defendant confirmed that he had and these were, indeed, the terms of the proposed disposition. The trial court then proceeded to admonish defendant that the disposition included his giving up rights, including the right to jury trial, and defendant expressly stated, "Yes," he was giving up that right.

At the sentencing hearing, counsel confirmed the stipulation that the trial court would consider all sentencing factors, both mitigating and aggravating. Defense counsel agreed there was a "[s]tip to all aggravating factors for the Court to be considered," so "[t]he options open to the Court are probation with jail time all the way up to the ten years. And that would be the eight years with one-third the middle term of two if the Court decided to run it consecutive."

Victim statements were given by a close friend of the victims' grandmother, who had known the victims all their lives, and one of the victims appeared.

The prosecution urged the court to impose the upper term, pointing out "[i]t only takes one factor [in aggravation] under the case law to—for the Court to do an aggravated sentence." He then urged the court to find

---

[3] All further references to the "rules" are to the California Rules of Court.

applicable all the factors in aggravation recommended in the probation report, as well as several additional aggravating factors. The probation officer emphasized the "long-term emotional, mental, and psychological ramifications" for the victims.

At the conclusion of the prosecution's presentation, defendant spoke, stating "The kids are lying. I have said that from the beginning, and I still say it. . . . [T]heir behavior isn't from anything I have done. They have been rotten behavior from the get-go. . . . [¶] . . . They didn't like the way I disciplined. . . . [¶] It's not me that didn't show remorse. I didn't do it. . . ." Defense counsel agreed her client had maintained he was innocent from "day one," and acknowledged "he is angry; he is upset." She also acknowledged that his prior section 288 conviction "made this a very difficult case," and stated the only reason he agreed to a negotiated disposition was to avoid the risk of a potential life sentence. Counsel asked the court to consider a midterm and not impose consecutive sentences; "[a]gain, my client is adamant that he's been falsely accused."

The probation officer then provided further testimony, stating when he asked defendant about his prior section 288 conviction, he said that case "was all lies, and he was railroaded in that case." "[F]or some reason the young men in this case as well as the counselors in that [prior case] were out to get him for some reason."

The court found defendant ineligible for probation and further found no mitigating factors and seven aggravating factors set forth in rule 4.421. Commenting that the aggravating circumstances "far, far outweigh" the circumstances in mitigation, the court sentenced defendant to a 10-year prison term, comprised of the upper term of eight years for count 5 and two

6

years (one-third of the six-year middle term) for count 6.  The remaining counts were dismissed.

## III. DISCUSSION

### A. *Ineligibility for Probation*

Defendant first contends the trial court (and counsel) erred in assuming he was presumptively ineligible for probation under section 1203, subdivision (e)(5), as stated in the sentencing report.  Defendant points out section 1203, subdivision (e)(5) provides such a presumption only where there has been a prior conviction of section 288 as a felony, and he was convicted of violating section 288 as a misdemeanor.

While defendant is correct that his misdemeanor conviction did not give rise to a presumption of ineligibility for probation, he made no objection at the time of sentencing to the court's invocation of such presumption and has therefore waived the issue on appeal.  (See *People v. Scott* (1994) 9 Cal.4th 331, 353.)  Recognizing this was likely the case, defendant alternatively advances a claim of ineffective assistance of counsel.

The standard of review for an ineffective assistance of counsel claim is well established.  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense."  (*Strickland v. Washington* (1984) 466 U.S. 668, 687.)  However, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."  (*Id.* at p. 697.)  Indeed, it is often easier to dispose of such a claim based on lack of sufficient prejudice alone.  (*Ibid.*)  To prevail on an ineffective assistance of counsel claim, "the

7

petitioner must carry his burden of proving prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel." (*People v. Williams* (1988) 44 Cal.3d 883, 937, quoting *People v. Stephenson* (1974) 10 Cal.3d 652, 661.)

We agree with the Attorney General that defendant cannot show prejudice attributable to the asserted ineffectiveness of counsel. "The standard for analyzing prejudice in an ineffective assistance of counsel claim mirrors the state standard for prejudicial error. (*Richardson v. Superior Court* (2008) 43 Cal.4th 1040, 1050–1051. . . .) That is, 'a "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' (*People v. Watson* (1956) 46 Cal.2d 818, 836. . . .)" (*People v. Lepere* (2023) 91 Cal.App.5th 727, 738.)

There is no reasonable probability a result more favorable to defendant would have ensued had counsel urged that defendant was fully eligible, rather than presumptively ineligible, for probation. First, defendant was, in fact, wholly ineligible, not merely presumptively ineligible, for probation pursuant to section 1203.66, subdivision (a)(5) and (7). These provisions state, "Notwithstanding Section 1203 or any other law, probation shall not be granted to . . . [¶] . . . [¶] (5) A person who is convicted of committing a violation of Section 288 or 288.5 and who has been previously convicted of a violation of Section 261, 264.1, 266, 266c, 267, 285, 286, 287, 288, 288.5, or 289, or former Section 262 or 288a . . . [¶] . . . [¶] [or] (7) A person who is convicted of committing a violation of Section 288 or 288.5 against more than one victim." (§ 1203.066, subd. (a)(5), (7).) Second, even if defendant was fully eligible for probation, there is no reasonable probability the court would

8

have granted probation, given the court's statements at the sentencing hearing and its imposition of the maximum allowable sentence under the terms of the plea agreement.

## B. *"Pleading" Aggravating Factors*

Defendant contends the recent amendments to section 1170, subdivision (b)(1) made by Senate Bill 567 require the prosecution to "plead" any aggravating factors it intends to urge at sentencing. After defendant filed his opening brief, the Court of Appeal in *People v. Pantaleon* (2023) 89 Cal.App.5th 932, 939–941 (*Pantaleon*) addressed and rejected this same contention. We agree with the analysis in *Pantaleon*, which points out there is a significant distinction between "enhancements," which section 1170.1, subdivision (e) requires "shall be alleged in the accusatory pleading" and " 'circumstances in aggravation' " addressed by section 1170, subdivision (b), which does not contain a like mandate. (*Pantaleon,* at pp. 939–940; see *Zepeda v. Superior Court* (2023) 97 Cal.App.5th 65, 96–97 (*Zepeda*) [amended statute does not require prosecutor to present evidence supporting aggravating factors at preliminary hearing].)

In short, as *Pantaleon* holds, defendant's sentence was not constitutionally or statutorily infirm due to failure to allege sentencing factors in aggravation.

## C. *Right to Jury Trial on Aggravating Factors*

In sentencing defendant to the upper term of eight years on one of the section 288, subdivision (a) convictions, the trial court identified seven of the aggravating factors enumerated in rule 4.421.[4] Five of these were crime-

---

[4] Section 1170, subdivision (a)(3) specifies that "[i]n sentencing the convicted person, the court shall apply the sentencing rules of the Judicial Council."

based: the crime involved acts disclosing a high degree of cruelty, viciousness, or callousness (rule 4.421(a)(1)); the victims were particularly vulnerable (*id.*, (a)(3)); defendant threatened one of the witnesses (*id.*, (a)(6)); the manner in which the crime was carried out indicated planning, sophistication or professionalism (*id.*, (a)(8)); and defendant took advantage of a position or trust or confidence (*id.*, (a)(11)).  Two of the aggravating factors related to defendant personally: he engaged in violent conduct that indicated a serious danger to society (*id.*, (b)(1)); and his prior convictions were numerous or of increasing seriousness (*id.*, (b)(2)).

Defendant's principal claim on appeal is that the aggravated term imposed by the court is unlawful because he did not, himself and in open court, waive his constitutional right to jury trial on the facts underlying the aggravated factors, as required by *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*) and *Blakely v. Washington* (2004) 542 U.S. 296 (*Blakely*).[5] (See generally *Black II, supra,* 41 Cal.4th at p. 816; Couzens et al., Sentencing California Crimes (The Rutter Group 2023) ¶ 10:1 et seq.)

Federal constitutional precedent establishes that " '[o]ther than the fact of a prior conviction, *any* fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' (*Apprendi* [*v. New Jersey* (2000)] 530 U.S. [466,] 490 . . . [(*Apprendi*)].)" (*Black II, supra,* 41 Cal.4th at p. 814.)  The "relevant 'statutory maximum' is not the maximum sentence a judge may impose after

---

[5]  At oral argument, counsel reiterated that defendant is advancing only a constitutional claim under the Sixth Amendment and is not challenging his aggravated sentence under section 1170, as amended by Senate Bill 567.

finding additional facts, but the maximum [the judge] may impose *without* any additional findings." (*Blakely, supra,* 542 U.S. at pp. 303–304.)

There are two exceptions to a defendant's Sixth Amendment right to a jury trial on aggravating facts—facts admitted by the defendant and the fact of a prior conviction. (*People v. Sandoval* (2007) 41 Cal.4th 825, 836–837 (*Sandoval*), citing *Blakely, supra,* 542 U.S. at pp. 301, 303; *Apprendi, supra,* 530 U.S. at p. 490; see *People v. Wiley* (2023) __ Cal.App.5th __, 2023 WL 8252049, at p. *3 (*Wiley*) [" 'aggravating circumstances based on a defendant's criminal history that render the defendant eligible for the upper term include a trial court's finding that the defendant suffered a prior conviction," citing *Black II*].) Otherwise, the defendant must waive his Sixth Amendment right to jury trial in order for the trial court to find aggravating circumstances that increase the defendant's sentence beyond the statutory maximum. (See *Black II, supra,* 41 Cal.4th at p. 816; *People v. French* (2008) 43 Cal.4th 36, 47–48 (*French*).)

Applying the principles established in *Apprendi* and its progeny, our Supreme Court ruled in *Black II* that "imposition of the upper term does not infringe upon the defendant's constitutional right to jury trial so long as one legally sufficient aggravating circumstance has been found to exist by the jury, has been admitted by the defendant, or is justified based upon the defendant's record of prior convictions." (*Black II, supra,* 41 Cal.4th at p. 816.) The court explained that "so long as a defendant is *eligible* for the upper term by virtue of facts that have been established consistently with Sixth Amendment principles, the federal Constitution permits the trial court to rely upon any number of aggravating circumstances in exercising its discretion to select the appropriate term by balancing aggravating and mitigating circumstances, regardless of whether the facts underlying those

11

circumstances have been found to be true by a jury." (*Black II,* at p. 813.)
" 'Judicial factfinding in the course of selecting a sentence within the
authorized range does not implicate the indictment, jury-trial, and
reasonable-doubt components of the Fifth and Sixth Amendments.' (*Harris v.
United States* (2002) 536 U.S. 545, 558. . . .) Facts considered by trial courts
in exercising their discretion within the statutory range of punishment
authorized for a crime 'have been the traditional domain of judges; they have
not been alleged in the indictment or proved beyond a reasonable doubt.
There is no reason to believe that those who framed the Fifth and Sixth
Amendments would have thought of them as the elements of the crime.' (*Id.*
at p. 560; see *Rita v. United States, supra,* 551 U.S. at p. —— . . . [the 'Sixth
Amendment cases do not automatically forbid a sentencing court to take
account of factual matters not determined by a jury and to increase the
sentence in consequence'].)" (*Black II,* at p. 813.)

Black II remains our high court's most recent pronouncement on
whether an upper term sentence imposed on the basis of at least one
permissibly established aggravating factor passes muster under the Sixth
Amendment right to jury trial. (See *Sandoval, supra,* 42 Cal.4th at p. 839
[holding, where *no* aggravating factors were found on a basis permissible
under *Blakely* and thus there *was* a Sixth Amendment violation, that "if a
reviewing court concludes, beyond a reasonable doubt, that the jury, applying
the beyond-a-reasonable-doubt standard, unquestionably would have found
true at least a single aggravating circumstance had it been submitted to the
jury, the Sixth Amendment error properly may be found harmless"]; cf. *Wiley,
supra,* __ Cal.App.5th at p. ___, 2023 WL 8252049 at p.*3 [rejecting
defendant's suggestion that *Black II* has been undercut by subsequent

12

decisions; "we find no basis to ignore *Black* or *Towne* . . .[,] decisions from our state's high court that address the precise [recidivist] issue presented here"].)

### 1. General Jury Trial Waiver

The Attorney General points out defendant stipulated that the preliminary hearing transcript provided a factual basis for his plea and further stipulated that the court would consider factors in aggravation in accordance with rule 4.421 and urges that these stipulations sufficed to waive defendant's constitutional right to jury trial on facts in aggravation.

As to the Attorney General's first point—that counsel's stipulation to the preliminary hearing transcript as a factual basis for the plea constituted a sufficient waiver of defendant's constitutional right to jury trial—the analysis is straightforward. Case authority squarely holds it does not. (See *French, supra,* 43 Cal.4th at pp. 46–47, 51 ["defense counsel's stipulation to the factual basis cannot reasonably be construed as an admission by the defendant sufficient to satisfy the Sixth Amendment requirements established in *Cunningham, supra,* 549 U.S. 270," (fn. omitted)].)

However, as to the Attorney General's second point—that counsel's stipulation that "under Penal Code section 1170(b)(2)" the court would "consider at sentencing" "all aggravating factors" "in Rule 4.421" constituted a sufficient waiver of defendant's right to jury trial—the analysis is more complex.

As we have recited, in his change of plea form defendant expressly waived his right to jury trial not only as to each charge but also to any "special allegation and/or sentence enhancement I admit to be true." And in open court he expressly confirmed that the terms of the disposition included that the court would consider all aggravating factors set forth in rule 4.421,

13

and after that confirmation, he went on to expressly confirm he was giving up various rights, including, specifically, his right to jury trial.

As our Supreme Court has explained, there is a distinction between what is *constitutionally* required for a valid jury waiver and what may be *statutorily* required under state law. (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 171 (*Sivongxxay*). In *Sivongxxay*, the defendant claimed his jury trial waiver did not encompass a waiver of his right to jury trial on a special circumstance allegation. (*Ibid.*) The court rejected his claim, stating "[d]efendant demands more than the federal and state Constitutions require for a valid waiver of the jury trial right. As discussed, a knowing and intelligent jury waiver requires an appreciation of the nature of the jury trial right and the consequences of forgoing this right. [Citation.] There is no additional constitutional requirement that a defendant be specifically advised of the specific charges, enhancements, allegations, or other issues to which a general jury waiver will apply. On the contrary, with a comprehensive jury waiver such as the one entered below, absent unusual circumstances not present here ' "[i]t is settled that where a defendant waives a jury trial he is deemed to have consented to a trial of all of the issues in the case before the court sitting without a jury." ' (*People v. Berutko* (1969) 71 Cal.2d 84, 94 . . . , quoting *People v. Russell* (1961) 195 Cal.App.2d 529, 532. . . .)" (*Id.,* at pp. 171, 173, italics omitted.)

The majority reiterated the point in responding to the dissent's conclusion to the contrary, stating "The dissenting justices apparently read the trial judge's advisements differently, perceiving the failure to expressly refer to the special circumstance allegation as somehow implicitly excluding that allegation from a counseled and otherwise comprehensive jury waiver. (See conc. & dis. opn. of Liu, J., *post*, at pp. 203–206; conc. & dis. opn. of

14

Cuéllar, J., *post*, at pp. 218–219.) We respectfully disagree with this interpretation of the colloquy, for the reasons we have previously given. The dissenting justices' position boils down to the proposition that the judge was constitutionally bound to utter the phrase 'special circumstance' at some point in the waiver colloquy with defendant, even if the judge never went on to explain what this phrase meant. But our waiver jurisprudence rejects the notion that a knowing and intelligent waiver hinges on the recitation of a ' "talismanic phrase." ' [Citations.] The fact of the matter is that the dissenting justices, like defendant, would require a degree of elaboration and specificity in a jury waiver colloquy that has never been demanded for a jury waiver to be considered knowing and intelligent under constitutional standards."[6] (*Sivongxxay*, *supra*, 3 Cal.5th at pp. 175–176, fn. & italics omitted.)

---

[6] We note that in *French,* the high court concluded the defendant had not forfeited his constitutional claim that he was entitled to a jury trial of aggravating facts, stating "At the time that defendant entered his plea of no contest, he expressly waived his right to a jury trial on the substantive offenses, but this waiver did not encompass his right to a jury trial on any aggravating circumstances. The absence of such an explicit waiver is not surprising. When defendant entered his plea, *Blakely* had not yet been decided, and prior to that decision 'it was widely assumed that for the purposes of the rule established in *Apprendi,* the maximum term authorized by the jury's verdict was the upper term.' [Citation.] . . . Defendant's waiver of jury trial on the offenses in connection with his no contest plea cannot reasonably be interpreted to extend to proof of aggravating circumstances when, at the time of the plea, no right to a jury trial on such circumstances had been recognized. Defendant did not forfeit his Sixth Amendment right by failing to request a jury trial on the aggravating circumstances, and his claim must be addressed on the merits." (*French, supra,* 43 Cal.4th at p. 48, fn. omitted.)

Both the majority and dissenting opinions in *Sivongxxay* make clear this statement in *French* applies where no jury trial right has yet been

15

The court reached a different conclusion with respect to the defendant's *statutory* right to jury trial on a special circumstance allegation as elucidated by the court in its prior decision in *People v. Memro* (1985) 38 Cal.3d 658 (*Memro*).[7]  (*Sivongxxay, supra,* 3 Cal.5th at pp. 176–178.)  In *Sivongxxay*, "[t]here was no specific reference in the waiver colloquy to the need to adjudicate the special circumstance allegation; the term 'special

recognized.  The majority's discussion is set forth above.  In his dissent, Justice Cuéllar stated, "The gist of defendant's claim is that the record fails to show he was aware of his right to a jury trial on this phase of the trial or that he waived it.  *State v. Williams* (2005) 197 Ore.App. 21 . . . presents an analogous situation.  Williams similarly was unaware that he had the right to a jury finding of the facts that could trigger an enhanced sentence; his trial had predated *Blakely v. Washington* (2004) 542 U.S. 296 . . . , which held that a criminal defendant has a federal constitutional right to have a jury find the facts that could subject him to a sentence greater than the statutory maximum.  The *Williams* court reasoned that no waiver could be implied in those circumstances unless the record showed that the defendant was aware both of ' "the right to have a jury determine the aggravating factors" ' and that ' "he was waiving that right." ' (*Williams*, at p. 1152; accord, *People v. French* (2008) 43 Cal.4th 36, 48 . . . [because the defendant entered his plea pre-*Blakely*, his jury waiver on the substantive offense 'did not encompass his right to a jury trial on any aggravating circumstances']; *State v. Schofield* (2005) 2005 ME 82. . . .)  Unlike the majority, I see no meaningful distinction in the fact that Williams was unaware of his jury trial right because of an intervening change in the law, while defendant was unaware of his jury trial right because it was never mentioned anywhere in the colloquy. (Cf. maj. opn., *ante*, at pp. 172–173, fn. 7.)" (*Sivongxxay, supra,* 3 Cal.5th at pp. 222–223 (dis. opn. of Cuéllar, J.).)

Here, in contrast, at the time defendant pleaded no contest, the constitutional right to jury trial on facts in aggravation was well established.

[7] "*Memro* construed the [then applicable] statutes (as enacted by the Legislature in 1977, see Stats. 1977, ch. 316, §§ 7, 12, pp. 1257, 1260), read together, as requiring a 'separate, personal waiver' of the right to a jury for a special circumstance allegation, above and beyond the standard guilt phase and penalty phase waiver." (*Sivongxxay, supra,* 3 Cal.5th at p. 176.)

16

circumstance' was never mentioned at all. Although such precision [was] not required for a knowing, voluntary, and intelligent waiver, [the high court believed] that *Memro's* requirement of a 'separate waiver,' " even as that rule was clarified in subsequent cases, "demand[ed] at least that much specificity." (*Id.* at pp. 177–178.) Thus, although the court recognized the line it was drawing was "a narrow one," it held the defendant's "purported waiver as to the special circumstance determination was deficient, as a matter of state law." (*Id.* at p. 178.)

Given the clarity of the record here that defendant knowingly and voluntarily waived his right to jury trial generally and did so fully advised and personally agreeing in open court that the negotiated disposition included that the court would consider all aggravating circumstances, we conclude defendant's jury waiver was *constitutionally* sufficient.

### 2. Prior Convictions

Even if we were to conclude defendant's jury trial waiver was not constitutionally sufficient, we agree with the Attorney General that the trial court relied on at least one permissibly established aggravating circumstance—defendant's prior convictions—and therefore, under *Black II*, the aggravated sentence is not constitutionally infirm.

At the sentencing hearing, the trial court stated defendant "had four prior DUIs at the time of this conviction, including a prior 288 as a misdemeanor. Now they have elevated to felony conduct." While the record of defendant's section 288, subdivision (c) conviction was admitted into evidence at the preliminary hearing, the four DUIs were identified in the probation department presentencing report.

Despite advancing only a constitutional challenge to his aggravated sentence, defendant complains none of these convictions were, as now

17

required by amended section 1170, subdivision (b)(3), based on a certified record of conviction presented to the trial court at the sentencing hearing.[8] The Attorney General essentially ignores the DUI convictions and focuses on the section 288, subdivision (c) conviction.

Regardless of the state of the briefing, we conclude the prior section 288, subdivision (c) conviction and the DUI convictions support the trial court's reliance on the recidivist factor set forth in rule 4.421(b)(2). The amended version of section 1170 went into effect four months *prior* to the sentencing hearing. However, defendant made no objection to the trial court's consideration of either the section 288, subdivision (c) conviction or the DUI convictions. The lack of certified copies of these convictions presented at the sentencing hearing was a foundational, *evidentiary* issue defendant could have, and should have, raised in the trial court. Indeed, had defendant made such an objection, the foundational issue could have been readily resolved. (Cf. *Wiley, supra,* __ Cal.App.5th at p. __, 2023 WL 8252049, at p. *2 [trial court continued sentencing hearing to enable prosecutor to obtain certified record of convictions].) Having made no objection to this evidence on any ground, let alone the specific ground of

---

[8] Historically, prior conviction findings based on the information in probation reports have not been criticized in cases considering whether a defendant's constitutional right to a jury trial was violated. (See, e.g., *People v. Towne* (2008) 44 Cal.4th 63, 76 [10 prior convictions listed in probation report supported aggravating circumstance that prior convictions were numerous]; *Black II, supra,* 41 Cal.4th at p. 818 [probation report's list of defendant's prior convictions demonstrated convictions were both numerous and of increasing seriousness]; see also *People v. Falcon* (2023) 92 Cal.App.5th 911, 942, fn. 10 (*Falcon*) ["we presume prior conviction findings made from a probation report would remain constitutionally sound," (italics omitted)], review granted Sept. 13, 2023, S281242.)

18

insufficient foundation, defendant has forfeited the issue on appeal. (See *People v. Jackson* (2016) 1 Cal.5th 269, 366 [defendant forfeited claim that testimony lacked foundation by failing to object on this ground at trial]; see Evid. Code, § 353, subd (a) [no reversal due to erroneous admission of evidence unless "[t]here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion"]; see also *People v. Achane* (2023) 92 Cal.App.5th 1037, 1047 (*Achane*) [where amended statute had been in effect for almost seven months, defendant's failure to request that sentencing court apply new provisions of the statute when it imposed suspended sentence forfeited any statutory challenge to the sentence; defendant "offers no persuasive reason why the usual forfeiture rules should not apply to his failure to raise his [amended section 1170, subdivision (b)(2)] retroactivity argument].")[9]

Furthermore, we agree with the Attorney General that in this case the section 288, subdivision (c) conviction, alone, was sufficient to support the court's invocation of the recidivist factor.

As we have recited, the recidivist factor set forth in rule 4.421(b)(2), states: "The defendant's prior convictions as an adult or sustained petitions

---

[9] Nor could defendant base an ineffective assistance of counsel claim on appeal on his counsel's failure to object. "[W]hen the reasons for counsel's actions are not readily apparent in the record, we will not assume constitutionally inadequate representation and reverse . . . unless the appellate record discloses ' "no conceivable tactical purpose" ' for counsel's act or omission. (*People v. Hines* [(1997)] 15 Cal.4th [997,] 1065, quoting *People v. Diaz* (1992) 3 Cal.4th 495, 558. . . .)" (*People v. Lewis* (2001) 25 Cal.4th 610, 674–675.) We can certainly conceive of a reasonable tactical reason defense counsel did not object given the benefit to defendant of the negotiated disposition.

in juvenile delinquency proceedings are numerous or of increasing seriousness." As defendant points out, this language refers to "convictions," plural.

The advisory committee comment states, however, that, "In determining whether to impose the upper term for a criminal offense, the court may consider as an aggravating factor that a defendant has suffered *one* or more prior convictions, based on a certified record of conviction." (Rule 4.421, Adv. Com. comm., italics added.) As we have noted, section 1170, subdivision (a)(3) directs that "[i]n sentencing the convicted person, the court shall apply the sentencing rules of the Judicial Council." An advisory committee comment is effectively the voice of the Judicial Council, providing further explanation as to the meaning of the language of a rule and guidance in its application. Thus, it is apparent that the Judicial Council's intent is that a court may consider one conviction as an aggravating factor.

The advisory committee's note, moreover, is not inherently inconsistent with the language of the rule. To begin with, the term "convictions," plural, can be used as an inclusive term, i.e., embracing one or more convictions. For example, if a person having only one prior conviction were asked whether he had prior conviction*s*, plural, he would in all likelihood answer, "yes, I have a conviction." It strains credibility to suppose he would answer "no" reasoning he was asked about convictions, plural, and leaving the person who asked the question with the impression he, in fact, had *no* prior convictions. The rule also speaks in terms of prior convictions that are "numerous *or* of increasing seriousness." (Rule 4.421(b)(2), italics added.) The numerosity option clearly covers convictions, plural, while one prior conviction can permit an assessment of comparative seriousness.

20

Furthermore, we cannot conceive the Legislature or the Judicial Council would not consider defendant's 1995 section 288, subdivision (c) conviction—for lewd or lascivious acts on a child 14 or 15 years old and which required him to register as a sex offender—an aggravating sentencing factor in *this* case wherein defendant was convicted of *two* counts of section 288, subdivision (a)—committing lewd or lascivious acts on a child *under the age of 14 years*. Indeed, it would seem an absurd result that the recidivism factor would not apply to defendant because he had only "once" been convicted of molesting a child 14 or 15 years old, before sustaining *multiple* convictions of molesting children *even younger* than that. We are, of course, counseled by the rules of construction not to interpret the language of statutes, regulations, or rules, to lead to such end. (See *Starbucks Corp. v. Superior Court* (2008) 168 Cal.App.4th 1436, 1449 [" ' "the literal meaning of its words must give way to avoid harsh results and mischievous or absurd consequences" ' "], quoting *Kinney v. Vaccari* (1980) 27 Cal.3d 348, 357.)

In addition, there is no practical distinction between a defendant who sustains two prior section 288 convictions before sustaining a third such conviction for which he receives a recidivist's aggravated sentence, and defendant's situation, since he also now has three section 288 convictions. In other words, we see no reasoned basis why the fact defendant's third section 288 conviction occurred in a case involving two victims should shield him from an aggravated recidivist sentence. Had defendant been separately charged with molesting the two victims, one of the cases would necessarily have been resolved before the other, resulting in defendant having two prior section 288 convictions. In fact, one could say that effectively happened in

21

this case when defendant pleaded guilty to the first of the two section 288, subdivision (a) charges.[10]

Since we have concluded that at least one of the factors in aggravation—recidivism under rule 4.421(b)(2)—was established in a

---

[10] We realize our conclusion in this regard differs from statements in *Falcon*, *supra*, 92 Cal.App.5th at page 953, review granted September 13, 2023, S281242 and *People v. Fernandez* (1990) 226 Cal.App.3d 669, 681 (*Fernandez*). In *Falcon*, evidence of two felony convictions was admitted at trial. The jury was required to find true one of the convictions to convict the defendant of being a felon in possession of a firearm. That left only one felony conviction for consideration under rule 4.421(b)(2). The appellate court stated, without further analysis, it was "unaware of any published authority holding one or two prior convictions qualify as 'numerous' for purposes of California Rules of Court, rule 4.421(b)(2)." (*Falcon,* at p. 953.) In *Fernandez,* the defendant was convicted of 155 counts of lewd and lascivious conduct upon a child and one count of lewd conduct by force. He admitted having one prior " 'serious felony' " conviction for rape and having served a prior prison term for various felonies. He was sentenced to 330 years in prison. (*Fernandez,* at p. 674.) The Court of Appeal concluded the trial had erred in numerous respects, including referring generically to the probation report as support for a host of aggravating factors (a patently insufficient explanation) and impermissible "dual use" of the rape conviction as a sentencing enhancement and a factor in aggravation. (*Id.* at pp. 678–681.) The court later commented, for purposes of remand, that taking the rape conviction out of the equation left two convictions (one for false imprisonment and one for possession of stolen property) and observed "[t]wo prior convictions" are "not 'numerous.' " It commented, without further analysis, the "applicability of" the recidivism factor was "questionable." (*Id.* at p. 681.) We also note in *French,* the Supreme Court commented the defendant's only prior criminal convictions were two misdemeanor offenses for which he had been placed on probation. (*French, supra,* 43 Cal.4th at p. 42.) However, the trial court in *French* did not rely on the recidivist factor, nor was any issue as to that factor raised or addressed by the high court.

For the reasons we have discussed, in our view, use of the plural term "convictions" is not dispositive and there is more to the analysis as to when the recidivist factor may apply than is reflected by these cases.

permissible manner (i.e., the fact of prior convictions of increasing seriousness), the trial court's finding of additional factors in aggravation did not, under *Black II*, violate defendant's Sixth Amendment right. (*Black II, supra,* 41 Cal.4th at p. 813 ["so long as a defendant is *eligible* for the upper term by virtue of facts that have been established consistently with Sixth Amendment principles, the federal Constitution permits the trial court to rely upon any number of aggravating circumstances in exercising its discretion to select the appropriate term by balancing aggravating and mitigating circumstances, regardless of whether the facts underlying those circumstances have been found to be true by a jury"]; see *Wiley, supra,* __ Cal.App.5th at p. __, 2023 WL 8252049, at pp. *3–5 [separately discussing constitutional jurisprudence and amended section 1170, subdivision (b), and concluding the amended statute " 'preserves [the] distinction' in Sixth Amendment jurisprudence" as to the permissible use of prior convictions and should not be construed "more narrowly" than is allowed under Sixth Amendment jurisprudence].)

We emphasize *Black II* did not hold that the defendant's constitutional right to jury trial had been violated but the violation was not prejudicial. Rather, *Black II* held the aggravated sentence passed muster under the Sixth Amendment because *no* Sixth Amendment violation occurred. (*Black II, supra,* 41 Cal.4th at pp. 813–816.) Accordingly, there was no constitutional error in *Black II* that required an assessment of harmlessness. In *French,* in contrast, no aggravating factor was established by means permissible under the Sixth Amendment. The same was true in *Sandoval, supra,* 41 Cal.4th at page 837—"[n]one of the aggravating circumstances cited by the trial court [came] within the exceptions set forth in *Blakely.*" Thus, in both *French* and *Sandoval* the high court was required to consider whether the violation of the

23

defendants' Sixth Amendment right was harmless. (*French, supra,* 43 Cal.4th at pp. 52–54; *Sandoval,* at pp. 838–843.)

Defendant did not address *Black II's* analysis in his opening brief. Rather, he relied on *French.* However, even in *French,* the high court reiterated that an upper term would have been constitutionally permissible "if the prosecution had established an aggravating factor at the sentencing hearing based upon defendant's prior convictions or upon his admissions." (*French, supra,* 43 Cal.4th at p. 45.) The difficulty in *French*, as we have observed, was that the trial court had not found *any* aggravating factor on such basis. (*Id.* at p. 43.) Accordingly, *Black II's* analysis simply did not apply.

In his closing brief, defendant argues for the first time that *Black II* "is not good law as applied to amended section 1170." He claims that under the amended law, a single aggravating factor is "no longer legally sufficient to make a defendant eligible for the upper term," (some capitalization & boldface omitted) as was the law when *Apprendi* and *Black II* were decided, and he points to the split in the Courts of Appeal as to the applicable standard for determining "harmlessness with regard to SB 567 error." It is well established that the Courts of Appeal generally will not consider new arguments advanced for the first time in a closing brief. (See *People v. Rangel* (2016) 62 Cal.4th 1192, 1218–1219 (*Rangel*) [" '[i]t is axiomatic that arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party' "]; *People v. Taylor* (2020) 43 Cal.App.5th 1102, 1114 [defendant forfeited arguments made for first time in reply brief].)[11]

---

[11] At oral argument, counsel maintained the discussion of *Black II* in defendant's closing brief was not belated and was a response to the Attorney

In any event, defendant cites no case holding that one factor in aggravation is *never* sufficient to impose an upper term, even in a case like this one where the court found *no* factors in mitigation. In fact, recent cases suggest the law in this regard remains unchanged. (See *Zepeda, supra,* 97 Cal.App.5th at p. 83 [under amended statute, court "has no authority to impose an upper term sentence unless a jury has found *one* or more aggravating factors true beyond a reasonable doubt," (italics added)]; *id.*, at p. 86 ["a judge lacks the authority to impose an upper-term sentence in the absence of a jury finding of *one* or more aggravating factors," (italics added)]; *Achane, supra,* 92 Cal.App.5th at p. 1044 ["trial court on remand can again impose the upper term if at least *one* aggravating factor is properly established by admission, finding beyond a reasonable doubt or certified record of conviction," (italics added)].)

Nor does the language of the amended statute foreclose reliance on a single aggravating factor in an appropriate case.[12] When speaking of a

_____

General's reliance on the case. However, given that defendant's principal argument on appeal is that his *constitutional* right to jury trial was infringed and that *Black II* is one of our high court's leading decisions on this issue, one would reasonably expect a discussion of the case in defendant's opening brief, including a discussion of why, as defendant now maintains, the case is "no longer good law."

[12] Until January 22, 2023, section 1170 gave the trial court broad authority to select the term (lower, middle, or upper) that "in the court's discretion, best serve[d] the interests of justice." (Former § 1170, subd. (b), as amended by Stats. 2020, ch. 29, § 15.) As amended by SB 567, section 1170, subdivision (b)(2), now provides, "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable

25

sentencing court's discretion to impose the upper term, section 1170, subdivisions (b)(1) through (3) require that aggravating facts either be admitted, found by the trier of fact beyond a reasonable doubt, or established by certified copy and provide that a sentencing court may impose the upper term "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term . . . ." (§ 1170, subd. (b).) Thus, by its plain terms, the amended language creates a rule limiting a trial court's discretion to impose the upper term in cases where no aggravating factor has been proven beyond a reasonable doubt, stipulated to by the defendant, or established by certified record. It does not establish any presumption as to how a sentencing court must exercise its discretion within these bounds. Moreover, given the silence of the statute in this regard, we must presume the Legislature left unchanged a sentencing court's well established discretion to impose, in an appropriate case, the upper term of imprisonment on the basis of a single aggravating factor. (See *People v. Osband* (1996) 13 Cal.4th 622, 728 ["[o]nly a single aggravating factor is required to impose the upper term"]; *People v. Nicolas* (2017) 8 Cal.App.5th 1165, 1182; see generally *People v. Castaneda* (1999) 75 Cal.App.4th 611, 614 ["A judge's subjective determination of the value of a case and the appropriate aggregate sentence, based on the judge's experiences with prior cases and the record in the defendant's case, cannot be ignored. A judge's subjective belief regarding the length of the sentence to be imposed is not improper as long as it is channeled by the guided discretion outlined in the myriad of statutory sentencing criteria"]). Thus, reading

---

doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).)

section 1170, subdivision (b)(1) through (3) in the context of the law existing at the time of its enactment, as we are required to do, we discern no change in the law that one aggravating circumstance can justify imposition of the upper term, *particularly* in a case, like this one, where the trial court finds *no* mitigating factors.

In his closing brief, defendant also points to comments by Justice Liu in concurring in the denial of review in *People v. Flores* (S274232, June 15, 2022) in which Justice Liu observed "it may no longer be true" that an upper term can be imposed on the basis of a single aggravating factor.[13] Again, we generally will not consider an argument made for the first time in a reply brief. Moreover, until the high court so holds, we will follow existing precedent. We also point out that Justice Liu's comment included the additional observation that "it appears a defendant is subject to an upper term sentence only if the aggravating circumstances are sufficient to 'justify the imposition' of that term under all of the circumstances, which may include evidence both in aggravation and in mitigation." (*Ibid.*, (conc. opn. of Liu, J.)) The instant case presents a different scenario, as here the trial court found no factors in mitigation.

---

[13] In *Flores*, unlike in the instant case, the defendant was sentenced prior to the enactment of the section 1170 amendments, and on appeal he claimed he was entitled to resentencing under the new *statutory* provisions. In finding error under the new statutory provisions, and in concluding it was harmless, the Court of Appeal quoted *Osband* for the proposition a single aggravating factor is sufficient to support an upper term and applied *Sandoval's* harmless error standard. (*Flores, supra,* 75 Cal.App.5th at pp. 500–501.) As we have pointed out, in *Sandoval*, none of the aggravating factors found by the trial court satisfied the Sixth Amendment. Thus, in *Sandoval*, in contrast to *Black II,* there was a constitutional violation, requiring a harmless error analysis.

27

Furthermore, as we have discussed, defendant confined his opening brief to a claim of *constitutional* error, i.e., that his Sixth Amendment right to jury trial had been violated by imposition of the upper term. He made no claim that any additional *statutory* rights set forth in amended section 1170 were violated. (See generally *French, supra,* 43 Cal.4th at pp. 46–48 [discussing distinction between constitutional and statutory rights to jury trial]; *People v. Mosby* (2004) 33 Cal.4th 353, 359–360 [also distinguishing between constitutional and statutory rights to jury trial].) Nor, as we have observed, did defendant make any such claims in the trial court. He has therefore forfeited any claims of error under the amended provisions of section 1170 by failing to raise them in the trial court, as well as waived any such claims by failing to raise them in his opening brief.[14] (See *Achane, supra,* 92 Cal.App.5th at p. 1044 [defendant's failure to request that sentencing court apply new provisions of the statute when it imposed suspended sentence forfeited any statutory challenge to the sentence]; see also *People v. Vera* (1997) 15 Cal.4th 269, 274–276 [by allowing jury to be discharged without objection, defendant forfeited *statutory* right to jury trial on sentencing allegations]; *People v. Sperling* (2017) 12 Cal.App.5th 1094, 1100 [by failing to object at the time of sentencing, defendant forfeited "claims that the trial court abused its discretion in sentencing him to the six-

---

[14] As the court stated in *People v. Ross* (2022) 86 Cal.App.5th 1346, 1353–1354, review granted March 15, 2023, S278266, the harmless error standard being debated in the Courts of Appeal is the standard to assess "error *under Senate Bill 567*" and is a "*state law* harmless error component" of the harmless error analysis. (Italics added.) (See *Falcon, supra,* 92 Cal.App.5th at p. 920 [By focusing on the minimum requirements of the Sixth Amendment, i.e., the prior conviction exception to the *Apprendi* rule, the *Flores* approach generally "fails to recognize *statutory* noncompliance as error and measure the effect of *statutory* noncompliance."].)

year middle term . . . because it failed to consider several mitigating factors and 'erroneously considered as aggravating factors facts that were elements of the offense itself' "].)  We therefore need not, and do not, weigh in on what standard of harmlessness should apply when a defendant's new statutory jury trial right under amended section 1170 has been violated.

In sum, we conclude defendant knowingly and intelligently waived his *constitutional* right to jury trial, including as to aggravating facts, and his aggravated sentence is constitutionally permissible for that reason, alone. We further conclude that, even if defendant did not sufficiently waive his constitutional jury trial right, the trial court found at least one aggravating factor—recidivism pursuant to rule 4.421(b)(2)—on a basis consistent with the Sixth Amendment and therefore, under *Black II,* his aggravated sentence is not *constitutionally* infirm.

## IV. DISPOSITION

The judgment is AFFIRMED.

                                    _____

                                    Banke, Acting PJ.

We concur:

_____

Margulies, J.*

_____

Getty, J.**

*Retired Justice of the Court of Appeal, First Appellate District assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**Judge of the Solano County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

A165406, People v. Hall

Trial Court: Del Norte County Superior Court

Trial Judge:        Hon. Darren McElfresh

Counsel:

Christopher Stansell under appointment by the Court of Appeal for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jefferey M. Laurence, Senior Assistant Attorney General, Masha A. Dabiza and Arthur P. Beever, Deputy Attorneys General for Plaintiff and Respondent.